**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MARIA ROSALES**<br><br>Petitioner,<br><br>v.<br><br>**Patricia Hyde**, Acting Field Office Director;<br>**David J. Venturella**, Acting Director of ICE;<br>**Markwayne Mullin,** Acting Secretary of DHS;<br>United States Citizenship and Immigration Services,<br>**Todd Blanche**, Acting Attorney General of the U.S.<br><br>Respondents. | Case No. 1:26-cv-13193<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1. This action seeks a writ of habeas corpus and declaratory and injunctive relief, including under the Administrative Procedures Act (APA), on behalf of Plaintiff/Petitioner, Maria Rosales.

2. The Petition and Complaint in this case include causes of action for habeas corpus relief, for mandamus and injunctive relief, and APA relief, all of which are all properly joined in one action pursuant to Fed. R. Civ. P. 15, 18 and 20. It alleges that ICE, by restraining Petitioner while her Consideration of Deferred Action for Childhood Arrivals ("DACA"), Form I-821D, remains pending is in violation of the APA and interfering with the Plaintiffs' statutory and due process right to seek immigration relief.

3. Petitioner Maria Rosales resides in Florida.

4. Petitioner is a native and citizen of Colombia.

5. Petitioner was arrested in Logan International Airport in Boston, Massachusetts by U.S. Immigration and Customs Enforcement ("ICE") and/or other federal agents acting on ICE's behalf on or about July 11, 2026.

6. Petitioner boarded a domestic flight from Miami, Florida and was arrested upon her arrival in Boston, Massachusetts.

7. Petitioner traveled to Boston in order to volunteer as part of a color guard at a Tall Ships event.

8. Petitioner is employed by a dermatologist, who regularly treats patients with skin cancer.

9. Her family escaped persecution in Colombia over a decade ago. She has lived in the United States since she was four years old.

10. On information and belief, the Department of Homeland Security ("DHS") will deny Petitioner a hearing on her civil detention.

11. Petitioner is neither a danger to the community nor a flight risk.

12. On information and belief, the Petitioner was previously granted DACA, which is available to applicants even if they have a removal order. Petitioner filed a renewed application for DACA, Form I-821D, on September 20, 2023. The application remains pending with United States Citizenship and Immigration Services.

13. Petitioner's due process rights have been violated in that her ability to pursue her DACA status has been impeded by virtue of her detention. Upon information and belief, she is believed to be eligible to receive continued deferred action as a DACA recipient.

14. Upon information and belief, it is believed that the Petitioner was arrested without a warrant.

15. On information and belief, Petitioner is currently being held in ICE's custody in the District of Massachusetts.

16. As of 10:20 a.m., the ICE locator did not record Petitioner's current location. This information was confirmed at 10:51 a.m. Instructions on the website state that additional information can be learned by contacting the ICE Field Office in Burlington, Massachusetts by telephone. Two phone calls were made at 10:47 a.m. and 10:49 a.m. There were no answers to these telephone calls. There is information that the field office is only open Monday through Friday. The ICE locator was checked a final time at 12:48 p.m. with no new information.

17. Counsel for the Petitioner has been unable to contact Petitioner despite having filed a Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative.

18. An email was sent to the Burlington Field Office at approximately 11:00 a.m. No response has been received.

19. Petitioner cannot be subject to mandatory detention under 8 U.S.C. § 1225(b)(1), including because Petitioner does not meet the criteria for expedited removal. *See Make the Road New York v. Noem*, No. 25-190, 2025 WL 2494908, at *23 (D.D.C. Aug. 29, 2025).

20. Petitioner cannot be subject to mandatory detention under 8 U.S.C. § 1225(b)(2), including because, as a person already present in the United States, Petitioner is not presently "seeking admission" to the United States. *See Aguiriano v. Romero v. Hyde*, No. 25-11631, 2025 WL 2403827, at *1, 8-13 (D. Mass. Aug. 19, 2025).

21. Petitioner is not lawfully subject to mandatory detention under 8 U.S.C. § 1226(c), including because she has not been convicted of any crime that triggers such detention. *See Demore v. Kim*, 538 U.S. 510, 513-14, 531 (2003) (allowing mandatory detention under § 1226(c) for brief detention of persons convicted of certain crimes and who concede removability).

22. Petitioner must, upon her request, receive a custody redetermination hearing with strong procedural protections. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021); *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021) (affirming class-wide declaratory judgment); 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

23. Petitioner is being irreparably harmed by his ongoing unlawful detention without a bond hearing. *See Aguiriano*, 2025 WL 2403827, at *6-8 (no exhaustion required because "[o]bviously, the loss of liberty is a . . . severe form of irreparable injury" (internal quotation marks omitted)); *Flores Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (declining to require administrative exhaustion, including because "[a] loss of liberty may be an irreparable harm"); *cf. Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) (citing *Bois v. Marsh*, 801 F.2d 462 468 (D.C. Cir. 1986), for proposition that "'[e]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest'").

24. The Immigration Court lacks jurisdiction to adjudicate the constitutional claims raised by Petitioner, and any attempt to raise such claims would be futile. *See Flores-Powell*, 677 F. Supp. 2d at 463 (holding "exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions and its prior interpretation" of the relevant statute).

25. There is no statutory requirement for Petitioner to exhaust administrative remedies. *See Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299, at *4 (D. Mass. July 7, 2025) ("[E]xhaustion is not require by statute in this context.").

26. Accordingly, there is no requirement for Petitioner to further exhaust administrative remedies before pursuing this Petition. *See Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, (1st Cir. 1997) (explaining that, where statutory exhaustion is not required, administrative exhaustion not required in situations of irreparable harm, futility, or predetermined outcome).

## JURISDICTION , VENUE, AND JOINDER

27. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*. and the APA, 5 U.S.C. § 551, *et seq*.

28. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., the APA, and the All Writs Act, 28 U.S.C. § 1651.

29. Venue is properly in Massachusetts although the custodian remains unknown. Counsel for the Petitioner has checked the ICE locator three times, twice called the field office, sent an email to the field office, and filed a Form G-28. None of these efforts have prompted a response from ICE. Counsel for the Petitioner has been unable to communicate with his client.

30. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States and a substantial part of the events or omissions giving rise to his claims occurred in this District.

31. The Federal Rules of Civil Procedure, as well as interests of judicial efficiency, provide that such joinder of claims is permissible and proper. First, the claims joined in this Petition/Complaint are of the type properly joined under Federal Rule of Civil Procedure 18, which provides that a party "may join, as independent or alternative claims, as many claims as it has against an opposing party." *See also United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

32. Moreover, all of these claims clearly arise from a common nucleus of operative facts and are properly considered together. *See* 28 U.S.C. §1367, Fed. R. Civ. P. 20. Thus, the claims in this case are properly joined in one action as is commonly done. *See, e.g., Brito v. Garland*, 22 F. 4th 240 (1st Cir. 2021) (addressing class action relief where "three Plaintiffs subsequently filed a habeas corpus petition and class action complaint for declaratory and injunctive relief including claims that government violated INA and APA); *Orellana v. Moniz*, 808 F. Supp. 3d 167 (D. Mass. 2025) (addressing combined petition for writ of habeas corpus and class action complaint asserting government's denial of bond hearings violated INA, Due Process Clause and the APA).

**PARTIES**

33. Plaintiff/Petitioner is a native and citizen of Colombia with a pending Form I-821D, who has been detained by ICE.

34. Respondent Patricia Hyde is the New England Field Office Director for U.S. Immigration and Customs Enforcement.

35. Respondent David J. Venturella is the Acting Director for U.S. Immigration and Customs Enforcement.

36. Respondent Markwayne Mullin is the Acting U.S. Secretary of Homeland Security. ICE and United States Citizenship and Immigration Services are component parts of the Department of Homeland Security.

37. Respondent Todd Blanche is the Acting U.S. Attorney General.

38. All respondents are named in their official capacities. One or more of the respondents is Petitioner's immediate custodian.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**Violation of 8 U.S.C. 1226(a) and Associated Regulations**

39. Petitioner may be detained, if at all, pursuant to 8 U.S.C. § 1226(a).

40. Under § 1226(a) and its associated regulations, Petitioner is entitled to a bond hearing. *See* 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

41. Petitioner has not been, and will not be, provided with a bond hearing as required by law.

42. Petitioner's continuing detention is therefore unlawful.

**COUNT TWO**
**Violation of Fifth Amendment Right to Due Process**
**(Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))**

43. Because Petitioner is a person arrested inside the United States and is subject to detention, if at all, under 8 U.S.C. § 1226(a), the Due Process Clause of the Fifth Amendment to the United States Constitution requires that Petitioner receive a bond hearing with strong procedural protections. *See Hernandez-Lara*, 10 F.4th at 41; *Doe*, 11 F.4th at 2; *Brito*, 22 F.4th at 256-57.

44. Petitioner has not been, and will not be, provided with a bond hearing as required by law.

45. Petitioner's continuing detention is therefore unlawful.

**COUNT THREE**
**Violation of Fifth Amendment Right to Due Process**
**(Failure to Provide an Individualized Hearing for Domestic Civil Detention)**

46. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

47. The Fifth Amendment's Due Process Clause forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V.

48. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*,

533 U.S. 678, 693 (2001); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"); *cf. Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (holding noncitizens due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S. territory, apparently moments after he crossed the border while he was still "on the threshold").

49. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. 678 at (2001).

50. The Supreme Court has thus "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases); *see also Salerno*, 481 U.S. at 755 (requiring individualized hearing and strong procedural protections for detention of people charged with federal crimes); *Foucha v. Louisiana,* 504 U.S. 71, 81-83 (1992) (same for civil commitment for mental illness); *Kansas v. Hendricks,* 521 U.S. 346, 357 (1997) (same for commitment of sex offenders).

51. Petitioner was arrested inside the United States and is being held without being provided any individualized detention hearing.

52. Petitioner's continuing detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

**COUNT FOUR**
**Violation of Fifth Amendment Right to Due Process**
**(Substantive Due Process)**

53. Because Petitioner is not being provided a bond hearing, the government is not taking any steps to effectuate its substantive obligation to ensure that immigration detention bears a "reasonable relation" to the purposes of immigration detention (*i.e.*, the prevention of flight and danger to the community during the pendency of removal proceedins) and is not impermissibly punitive. *See Zadvydas*, 533 U.S. at 690 (Kennedy, J., concurring).

54. Petitioner's detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

**COUNT FIVE**
**Violation of the Administrative Procedure Act**

55. The allegations in the above paragraphs are realleged and incorporated herein.

56. The Administrative Procedure Act (APA) provides that a court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi Shaugnessy*, 347 U.S. 260, 266, 268 (1954).

57. A court reviewing agency action "must assess … whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment; it must "examine[e] the reasons for agency decisions- or, as the case may be, the absence of such reasons." *Judulang v. Holde*r, 565 U.S. 42, 53 (2011) (quotations omitted).

58. The APA authorizes courts to "set aside" agency action that is "in excess of statutory jurisdiction, authority, limitations, or statutory right" or otherwise "not in accordance with law." 5 U.S.C. § 706(2)(A), (C). It directs courts to "decide all relevant questions of law" and to "interpret constitutional and statutory provisions." *Id* at § 706. Courts perform this review

*de novo* and therefore afford agency interpretation of the statute no deference when determining its meaning. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

59. The government holding Petitioner in detention without meaningful access to a bond hearing is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706 (2)(A), (B), (C).

60. Holding a noncitizen in detention under *Matter of Yajure Hurtado* without consideration of their individualized potential danger to the community or risk of flight constitutes an unlawful change is policy that is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706 (2)(A), (B), (C). *Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021).

61. Respondents' adoption and implementation of the 2025 ICE Policy Memo and the "Blind Removal Policy," pursuant to which Respondents seek to deport Petitioner, prior to addressing her DACA application, among other things, violates the APA. See *Immigr. Ctr. for Women & Children (ICWC) v. Noem*, 25-cv-09848-AB-AS, 2026 U.S. Dist. LEXIS 114740 (C.D. Cal. May 20, 2026). For the reasons relied upon in the *ICWC* decision, this Court should stay the application of the 2025 ICE Policy Memo and Blind Removal Policy, including as to Plaintiff.

62. Plaintiff therefore respectfully request that this Court issue preliminary relief as needed to preserve the status quo and prevent irreparable harm.

**COUNT SIX**
**Violation of the Fourth Amendment's Protection Against Unreasonable Searches and Seizures**

63. The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. This protection also extends to noncitizens. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990) (noting

that noncitizens "receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country").

64. Courts may deny Fourth Amendment claims in the habeas context based on a petitioner's failure to demonstrate that release is the proper remedy for such alleged violations. *See Velasquez v. LaRose*, Case No.: 25-CV-3137 JLS (MSB), 2025 U.S. Dist. LEXIS 229643, 2025 WL 3251373, at *4 (S.D. Cal. Nov. 21, 2025) (holding [*11] the petitioner "has not met his burden in proving that . . . release is the remedy for the alleged Fourth Amendment violations") (citing *United States v. Crews*, 445 U.S. 463, 474, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980)); *see also Aredondo v. Lyons*, Case No. 2:25-cv-01838-TMC, 2025 U.S. Dist. LEXIS 234289, 2025 WL 3436812, at *4 (W.D. Wash. Oct. 15, 2025) (holding the petitioner failed to "prove[ ] an entitlement to habeas relief based on his Fourth Amendment claim").

65. Here, Petitioner's immediate release is the proper remedy because, as opposed to a bond hearing, release would preserve the *status quo* of the parties prior to the Fourth Amendment violation. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008). Although bond may secure Petitioner's release, it would only do so if she were to pay an amount of money directly to the party who violently abridged her constitutional rights. The traditional remedy of release avoids this step and furthers a more just end.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Order that Petitioner shall not be transferred outside the District of Massachusetts;

(3) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(4) Issue an Emergency Order Staying Deportation/Removal.

(5) Declare that Petitioner's detention is unlawful.

(6) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately, or, in the alternative, provide Petitioner with a bond hearing and order Petitioner's release on conditions the Court deems just and proper.

(7) Order Respondents to return Petitioner's property upon release from custody.

(8) Award Petitioner's attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

(9) Grant any further relief this Court deems just and proper.

Respectfully submitted,

Dated: July 11, 2026

*/s/ Todd C. Pomerleau*
*Counsel for Petitioner*
MA BBO #640964
Rubin Pomerleau, P.C.
Two Center Plaza, Suite 520
Boston, MA 02108
Tel: 617.367.0077
Fax: 617.367.0071
Email: tcp@rubinpom.com

*Counsel for Petitioner*