**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MARIA ROSALES**<br><br>Petitioner,<br>v.<br><br>**Patricia Hyde**, Acting Field Office Director; et al.<br><br>Respondents. | C.A. No. 26-cv-13193-MJJ |

**PETITIONER'S REPLY IN SUPPORT OF HER PETITION FOR A WRIT OF HABEAS CORPUS AND REQUEST FOR IMMEDIATE RELEASE**

Petitioner Maria Rosales submits this Reply to Respondents' Opposition to Her Petition for a Writ of Habeas Corpus (ECF #9).

Maria Rosales is a 32-year-old woman who was brought to this country from Colombia as a four-year-old and has lived in the United States for the last 28 years. She is recipient of Deferred Action for Childhood Arrivals (DACA) status and applied for DACA renewal three years ago. Rather than adjudicate her application, Respondents seek to ignore DACA, its requirements and purpose, to detain and deport her quickly without any process. This conduct violates the government's own policies and regulations, as well as the requirements of the Immigration and Nationality Act (INA) and the Due Process Clause of the Constitution.

In addition, courts have repeatedly released noncitizens previously released while subject to final orders of removal, when Respondents detained without the required regulatory process. *See*, *e.g.*, *Da Silva Lima v. Wesling*, 26-CV-12266-IT (D. Mass. May 27, 2026) *Tran v. Lyons*, 2026 U.S. Dist. LEXIS 59036, *6-11 (D. Mass. Mar. 20, 2026); *Deng v. Nessinger*, 2026 U.S. Dist. LEXIS 47738, *8-12 (D. R.I. Mar. 9, 2026), *Gomes-Afonseca v. Lyons*, 2026 U.S. Dist. LEXIS 39654 (D. Mass. Feb. 26, 2026).

Respondents' recent practice of detaining noncitizens such as the Petitioner who are pursuing legal status such as DACA without any process also violates due process and is a policy change that is arbitrary and capricious and contrary to law in violation of the Administrative Procedures Act. *See, e.g., Immigr. Ctr. For Women & Children v. Noem* (ICWC), 2026 U.S. Dist. LEXIS 114740, 132-156 (C.D. Cal. May 20, 2026) (holding plaintiffs likely to succeed on merits of due process and APA claims where ICE changed its policies to detain and deport T, U, and VAWA visas applicants without first considering their applications and eligibility for stays).

Moreover, it appears that Ms. Rosales was arrested without the statutorily required warrant and she has been held for over a week in the Burlington ICE facility, without sufficient access to showers, requested medicine, or regular food or water.

For all of these reasons, and those further set forth below, Petitioner requests that this Court order her immediate release from wrongful detention.

## STATEMENT OF FACTS

Maria Rosales was brought to the United States by her family in or about 1998 when her family came here to escape persecution in Colombia. Exh. A (Dictated Statement of Maria Rosales). Maria attended school in the United States and now works as an assistant to a dermatologist. She is also the director of her own non-profit organization, Vestige, which is an educational organization that provides young adults in Orlando with training and performance opportunities in the performing arts. Through expert instruction, mentorship, and competitive programing, the organization fosters personal growth, discipline, artistic excellence, while promoting community engagement and cultural enrichment. *See* https://www.vestigewinterguard.com/.

Since her detention on July 10, 2026, Mara has been held at the ICE Field Office in Burlington, Massachusetts. As set forth in her statement (Exh A), she and the other women there were deprived of adequate washing conditions, food, water, and access to counsel. She states:

> Housing conditions have been tough. … I asked for tylenol one night and was disregarded. We have to beg for phone time to speak to our lawyers and our family, but our time is extremely limited. There was a day when the girls kept asking for the phone and for food so the officers got angry and claimed that the phones were down all day … There were nights when we had 8 girls to a room. The room is extremely hot with all those bodies in a tiny cell. Many times when we try to speak to the staff, they get irritated for any questions we ask. …We have to beg for water and when we ask for several they limit us. There have been days when I had no water left. … There have been days when we have to ask for food several times but they feed us at their convenience.

Also, as set forth in her statement, until she was detained, Maria Rosales was not aware of a final order of removal. She had applied for and received DACA and believed that she was protected by that status and application for renewal. Exh. A.[1] Now that she is aware of the final order of removal, and it is evident that the notice upon which she was removed was constitutionally deficient, her new counsel anticipates filing a motion to reopen her order of removal.[2]

**Background on DACA**

In 2012, the Department of Homeland Security (DHS) Secretary announced a DACA program for persons who arrived in the United States as a child and who, at the time of the program's creation, (1) were under age 31 in 2012; (2) had continuously resided in the United States since 2007; (3) were current students; (4) had completed high school or were honorably

---

[1] Although Respondents suggest that after the final removal order in 2017 (in absentia), Respondents did not hear from Ms. Rosales again until they found her at the airport on July 10, 2026. ECF #9 at 2, in fact, Ms. Rosales presented herself to USCIS to seek DACA and in 2023, filed to renew that status, and it is the government that has failed to act on that application.

[2] Because the order of removal as to Ms. Rosales was entered in absentia, the filing of a motion to reopen on that basis triggers an automatic stay under the immigration laws while the motion to reopen is pending. This is another reason why her removal is not imminent and supports her immediate release.

discharged veterans; (5) had not been convicted of any serious crimes; and (6) did not threaten national security or public safety. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 9-10 (2020). The program instructed immigration officials not to remove "certain young people who were brought to this country as children and know only this country as home." *See* https://www.dhs.gov/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf. Grantees are eligible for work authorization and other federal benefits.

In 2017, the Trump Administration attempted to rescind DACA, but the Supreme Court in *Regents* held that "[b]ecause the DACA program is more than a non-enforcement policy, its recission is subject to review under the APA." *Id.* at 19. The Court held that the recission was arbitrary and capricious because it failed to consider adequately "the options of retaining forbearance or accommodating particular reliance interests." *Id.* at 33.

Thus, according to the United States Citizenship and Immigration Services (USCIS) website, DACA recipients are supposed to be able to renew their DACA status. According to the USCIS website, "those who had obtained DACA on or before July 16, 2021, will still be protected. They will also be able to renew their DACA and work authorization requests." https://www.usa.gov/daca.

## ARGUMENT

### I. RESPONDENTS HAVE VIOLATED PETITIONER'S RIGHT TO PURSUE AVAILABLE IMMIGRATION RELIEF AND DACA PROTECTIONS.

Due Process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits available under the immigration laws. *See Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself"). *See also United States ex Rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); (holding petitioner entitled to a hearing to demonstrate that Attorney General's

circulation of a list of "unsavory characters." made fair consideration of her petition impossible); *Benitez v. Wilkinson*, 987 F.3d 46, 52 (D. Mass, 2021) (holding BIA abused its discretion in failing to reopen proceedings in light of U-Visa and related ICE policy directives); *Mayers v. INS*, 175 F.3d 1289, 1301 n. 15 (11th Cir. 1999) (noting that it had authority to review habeas petition because petitioners were not seeking review of the discretionary decision as to whether to grant specific immigration relief, "but rather are seeking to review a decision concerning the ability to apply for such a waiver."); *Goncalves v. Reno*, 144 F.3d 110, 130-135 (1st Cir. 1998) (holding petitioner's statutory right to apply for immigration relief under 8 U.S.C. §1182 could not be retroactively taken away, district court had habeas jurisdiction and petitioner was entitled to be "considered for such relief"); *Devitri v. Cronen*, 289 F. Supp. 3d 287 (D. Mass 2018) ("Congress created a statutory right for each alien to file a motion to reopen immigration proceedings.").

By seeking to deport the Petitioner when her DACA status was previously approved and her renewal was pending, Respondents are seeking to deprive the Petitioner of the ability to pursue the benefits for which she is eligible under the INA and its regulations, and DACA program, which is designed to protect from enforcement upstanding residents such as this young woman, who were brought here as children, and grew up knowing only the United States as their home. Deporting the Petitioner prior to the adjudication of her DACA renewal would also subject the Petitioner to a ten-year bar on re-entry and thus imposing precisely the type of long-term harm Iin removing her from the only home she has really known that DACA is intended to avoid.

Although Respondents argue that DACA confers no protection from deportation, the Supreme Court's ruling in *Regents,* as well as other court rulings, hold otherwise. In *Regent*s, the Supreme Court found that DACA does not constitute merely a "passive non-enforcement policy; it create[s] a program conferring affirmative relief." 591 U.S. at 18. Moreover, in *Estarada Juarez*

*v. Noem,* 2026 U.S. Dist. LEXIS 60917, *1-2 (E.D. Calif. Mar. 23, 2026), the court not only held that DACA confers protected interests but also required DHS to return a DACA recipient it had wrongfully deported despite her DACA status. The *Estrada* court held:

> Because Petitioner was removed in flagrant violation of the regulatory protections afforded to her under DACA and in violation of the Constitutional protections afforded to her under the Due Process Clause of the Fifth Amended to the U.S. Constitution, the court will grant Petitioner's motion for a temporary restraining order and order that Respondents facilitate her immediate return to the United States.

*Id.*

DACA protects noncitizens from detention or removal, regardless of their immigration history. *Estrada,* 2026 U.S. Dist. LEXIS 60917, *14-15. *See generally Alvarado v. Noem*, 2026 U.S. Dist. LEXIS 7537, *2-4 (E. D. Cal Jan 14, 2026) (holding that where Petitioner was not subject to removal because he was granted deferred removal by the government based upon a U Visa application, "there is definitionally no likelihood of removal in the foreseeable future and Respondents have no legal justification for detaining him").

Numerous courts have found that noncitizens have a due process-protected interest in their DACA status. *See, e.g., Estrada*, 2026 U.S. Dist. LEXIS 60917, *17-19; *Medina v. U.S. Dep't of Homeland Sec.*, 313 F.Supp. 3d 1237, 1251 (W.D. Wash. 2018) (holding that once a DACA applicant satisfies the objective and non-discretionary criteria, he "enjoys significant liberty and property interests, including the right to obtain lawful employment authorization and the right to be considered lawfully present in the United States.") (internal quotations omitted); *Inland Empire - Immigrant Youth Collective v. Nielsen*, 2018 U.S. Dist. LEXIS 242686, at *63-64 (C.D. Cal. Apr. 19, 2018) ("[B]ecause Plaintiffs have sufficiently demonstrated that the grant of DACA constitutes a conferred benefit that requires procedural safeguards before it can be terminated, the Court concludes that the due process claim should not be dismissed on this basis."); *Santiago v. Noem*,

2025 U.S. Dist. LEXIS 195616, *39-40 (W.D. Tex. Oct. 2, 2025) (ordering immediate release of detained DACA because she was protected by DACA from removal). *See generally Ramos-Lopez v. Bondi,* 2026 U.S. Dist. LEXIS 134467, *19-20 (D. Md. June 17, 2026) (joining the "litany" of courts concluding that someone who has been granted deferred action status has a property and liberty interest in that status that is protected by the due process clause, citing cases.).

Nor can Respondents deprive Petitioner of that right or the protections of DACA simply by not adjudicating her renewal application. In *Sencion v. Moniz*, 2026 U.S. Dist. LEXIS 158883 (D. Mass. July 17, 2026), another court in this district reiterated that right to apply for relief "carries with it the right to have the [application] adjudicated…. Accordingly, Petitioner has a due-process protected right to the adjudication of his [application for relief]." *Id.* at 8-9. S*ee also You v. Nielsen*, 321 F.Supp. 3d 451, 465 (S.D. N.Y. 2018) (noting that without adjudication the opportunity to submit applications to seek relief from removal would be "a mere illusion"); *Caplash v. Johnson*, 230 F. Supp. 3d 128, 139 (W.D. N.Y. 2017) ("[A] constitutionally protected property interest attaches to 8 U.S.C. §1154(b), and, by extension, to the adjudication of Plaintiff's Form I-130 Petition."); *Shoaibi v. Mayorkas*, 2021 U.S. Dist. LEXIS 202771, 15-16 (W.D. N.Y. Oct. 21, 2021) ("[I]t is not that [Petitioner} is *entitled* to a *grant* of his I-130 Petition, but that he is entitled to a *fair adjudication* of the I-130 Petition.").

## II. THERE IS NO JURISDICTIONAL BAR TO PREVENTING DETENTION WHILE THE PETITIONER PURSUES LEGALLY AVAILABLE RELIEF.

Respondents are incorrect in their claim that the Court lacks jurisdiction to grant the requested relief here due to the jurisdictional limits of 8 U.S.C. § 1252(g). The Supreme Court has interpreted Section 1252(g) to apply to "only to three discrete actions that the Attorney General may take: [the] decision or action to *commence* proceedings, *adjudicate* cases or *execute* removal orders." *Reno v. Am-Arab Anti Discrimination Comm.*, 525 U.S. 471, 482 (1999) (internal

quotations omitted.). The First Circuit likewise has recognized that Section 1252(g) "does not bar judicial review of … challenges[s] to the lawfulness of detention, "particularly given that "assertion of illegal detention are plainly collateral to ICE's prosecutorial decisions to executive [a noncitizen's] removal." *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023).

The Supreme Court, in granting an APA challenge to the attempted recission of DACA, rejected such a jurisdictional bar, noting "We have previously rejected as 'implausible' the Government's suggestion that §1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation." *Regents*, 591 U.S. at 19 (citations omitted). In addition, as discussed above, courts have repeatedly determined that they have jurisdiction and granted such relief to protect the ability to pursue legal rights in immigration proceedings. *See, e.g.*, *Sencion v. Moniz*, 2026 U.S. Dist. LEXIS 158883, *5-6 (D. Mass. July 17, 2026) (finding jurisdiction to review legality of Petitioner's detention and Respondents' interference with due process right to pursue relief); *Estrada*, 2026 U.S. Dist. LEXIS 60917, *7-10 (rejecting challenge to jurisdiction because "Petitioner does not challenge Respondent's discretionary determination to execute a removal order but instead challenges whether Respondents had the lawful authority to exercise that discretion,"); *Oliveira v. Edlow*, 2025 U.S. Dist. LEXIS 251364, *20-28 (D. Mass. Dec. 4, 2025) (granting relief to prevent interference with application for U-Visa for victim of certain crimes); *Calderon Jiminez v. Cronen*, 317 F. Supp. 3d 626, 637 (D. Mass. 2018) (granting preliminary relief in the analogous situation relating to I-130 family petition for persons with removal orders but married to U.S. citizens).

A court has the jurisdiction and authority to protect an applicant's right to pursue such relief. *See, e.g., Ceta v. Mukasey*, 535 F.3d 639, 643-646 (7th Cir. 2008) (holding that although it did not generally have jurisdiction to review an immigration judge's discretionary decision to deny

a continuance, it did have jurisdiction if that denial operated to "nullify" some statutory right or leads inescapably to a substantive adverse decision on the merits of an immigration claim."); *ICWC*, 2026 U.S. Dist. LEXIS 114740, 132-139 (holding plaintiffs likely to succeed on merits of due process claim where ICE was detaining and deporting persons to whom USCIS had granted deferred action); *Gonzalez v. Wesling*, 2026 U.S. Dist. LEXIS 136829, 14-15 (D. R.I. June 19, 2026) (finding a due process violation, explaining "[t]hat [petitioner] seeks a discretionary form of relief is of no consequence here, given that he at least has the right to apply for that relief"); *Gavarete Ramirez v. Nessinger*, C.A. No. 26-cv-00259-MRD-AEM (D. R.I. May 14, 2026) (granting habeas relief to allow Petitioner to pursue T-Visa process and ordering that "Respondents SHALL NOT interfere with Petitioner's ability to pursue her pending I-914 (T-Visa) and SHALL continue processing the request in the normal course"); *Vasquez v. Turek,* 2025 U.S. Dist. LEXIS 190746, *14 (D. Vt. Sept. 25, 2025) (granting relief recognizing an "articulable liberty interest … to be free from undue interference while undertaking the mandated process of filing a T-Visa and receiving a bona fide determination"); *S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 411 (S.D.N.Y. 2018) (finding petitioner made a "strong showing" that she is likely to succeed on the merits of her due process claim because Petitioner has a right to make the [visa] applications and have them fully adjudicated without undue interference.". *See generally Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004) ("The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference.").

The court in *Gavarete Ramirez,* 26-cv-00259-MRD, explained, "Petitioner has a protected liberty interest in her pending T-Visa application" and "Respondents stated plans to remove the Petitioner to Honduras prior to the completion of the visa application process" are "an admission that DHS/ICE are actively denying the Petitioner the opportunity to avail herself of a legitimate

immigration process." *Id.* at *4, n.3. Here, Respondents are seeking to deny Petitioner her due process right to avail herself of the legitimate immigration process to renew her DACA status.

In addition, in this case, the original Notice to Appear, ECF #9-1, which began the proceedings against the Petitioner that ultimately resulted in a removal order was invalid notice because it did not state either a date or time for the hearing. *See Pereira v. Sessions*, 585 U.S. 198 (2018) (holding notice to appear that did not specify time and place of removal proceeding was invalid). Pursuant to 8 U.S.C. § 1229a(b)(5)(C)(ii), a case can be reopened at any time if the noncitizen did not receive the required notice and the statute provides that such a motion "shall stay" removal pending disposition by the immigration judge. *Id.* Petitioner, who has just learned of the final order of removal, also anticipates pursuing a Motion to Reopen as to her removal order. For this reason, as well, it would be a violation of due process to require the Petitioners to depart under an order obtained through invalid process, and without an opportunity to pursue the Motion to Reopen which she has just learned is available to her.

## III. RESPONDENTS' ACTIONS VIOLATED THE APA.

Respondents' continued detention and planned deportation of the Petitioner while she seeks to renew her DACA is also a change of policy and practice that violates the APA, as it is arbitrary and capricious, an abuse of discretion, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706 (2)(A), (B), (C). The APA provides that a court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi Shaughnessy*, 347 U.S. 260, 266, 268 (1954).

The APA directs courts to "decide all relevant questions of law" and to "interpret constitutional and statutory provisions." *Id* at § 706. Courts perform this review *de novo* and therefore afford agency interpretation of the statute no deference when determining its meaning. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). The APA also sets forth rule-making procedures that agencies must follow before adopting substantive rules. *See* 5 U.S.C. § 553. A court reviewing agency action "must assess . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment" and "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

Respondents attempt to deport the Petitioner after she was granted DACA status and while her DACA renewal is pending for three years is directly contrary to the provisions and purpose of DACA and thus arbitrary and capricious and contrary to law for this reason as well.

In 2018, the court in *Calderon Jiminez*, 317, F. Supp. 3d 626 granted preliminary relief in the similar situation of attempted detention and deportation for persons with final removal orders and pending I-130 petitions based upon marriage to U.S. citizens. That was resolved by a class-wide settlement prohibiting such conduct with respect to persons pursuing legal permanent resident status as spouses of U.S. citizens. *See, e.g. Jimenez v. Mayorkas*, 2024 U.S. Dist. LEXIS 190129 (D. Mass 2024) (approving settlement). The settlement provides that ICE may not take enforcement actions against class members, persons pursuing legal permanent resident status as spouses of U.S. citizens with final orders of removal, except when ICE determines that an individual poses a threat to public safety. *Id.*

Similarly, in *ICWC*, 2026 U.S. Dist. LEXIS 114740, 132-156, the court granted relief under the APA staying the implementation of recent ICE policies providing for deportation and removal

of T, U and VAWA Visa applicants without a prima facie review of their eligibility for the relief or a stay. *See also Catia Elilia Marques v. Mullin*, C.A. No. 26-11926-BEM (D. Mass. April 29, 2026) (ordering that the plaintiff could not be detained at her green card interview).

Respondents argue that DACA does not affect the order of removal because it is "only a is a form of deferred action." ECF #9 at 4. But that is exactly the point – under DACA, the government defers enforcement action – such as detention or removal – for people who were brought to the United States long ago as children. Also, Respondents incorrectly claim that Petitioner has not taken any action to address her removal order (*id).* But applying for DACA and seeking to renew DACA is in fact an action to defer action under her removal order. Moreover, it appears that she was unaware of the removal order in any event. Also, in *Regents*, the Supreme Court recognized that the promise of DACA creates reliance interests – a reliance interest that is protected by due process. 591 U.S. at 32-33.

Thus, ICE's change in practice to detain and deport DACA holders, applicants and renewals, is also a final agency decision that is arbitrary and capricious, and contrary to law. It is contrary to and interferes with Petitioner's available relief and the DHS's own representations.

The harm to the Petitioner from detention and deportation without allowing her to pursue the available process is enormous, including separating her from her family, her friends, her work and her entire life in the only country she has known. It would also subject her to a ten-year bar on return. "Courts have long recognized that deportation is a 'drastic measure' carrying with it 'harsh consequences.'" *Gonzalez*, 2026 U.S. Dist. LEXIS 136829, *19 (citing, *inter alia*, *Padilla v. Kentucky*, 559 U.S. 356, 360 (2010). Maria Rosales is also suffering the emotional, financial and psychological harm from the detention and planned deportation and the total disruption of her life. *See Feitoza v. Noem*, 2026 U.S. Dist. LEXIS 19642, *13-14 (D. Mass. Jan. 30, 2026) (holding that

the threat of imminent arrest and that "loss of liberty" is a severe form of irreparable injury).

The harm to the government from allowing the Petitioner to remain un-detained, as she has been for the last decade, is non-existent. Such a process is exactly what is provided for by DACA. It is a benefit to the public interest to appropriately, with due process, implement mandates as to who should be granted immigration relief. Any claimed benefit to the government from seeking to detain or remove a person before the government has appropriately considered and adjudicated their claims for relief is constitutionally insufficient or of little weight. *See Oliveira*, 2025 U.S. Dist. LEXIS 251364, *20-28 (granting temporary restraining order preventing removal of the Plaintiff while the Plaintiff pursues U-Visa for noncitizen crime victims).

## IV. PETITIONER'S DETENTION WITHOUT PROCESS IS NOT AUTHORIZED BY 8 U.S.C. § 1231(a).

Even if the Petitioner were not a DACA recipient, Respondents are also incorrect that they may detain a person whom they have previously released with no process. Respondents' argument ignores the statutory frameworks that govern detention after release for persons with final orders of removal under 8 U.S.C. § 1231(a)(3), implemented in 8 C.F.R. §§ 241.4 and 241.13.

Respondents assert that they can hold the Petitioner pursuant to 8 U.S.C. § 1231(a)(6) without any process because there is a final order of removal. That statutory provision, however, governs detention during the initial removal period, and the continuation or termination of that detention immediately following such a period of detention. It is not applicable where, as here, the Petitioner was not detained during the initial removal period or was released thereafter.

A separate section of the statute, 8 U.S.C. § 1231(a)(3), governs what happens if the noncitizen is not removed during the 90-day period and is released during or after that period. This section, entitled "Supervision after 90-day period," provides that if a noncitizen "does not leave or is not removed within the removal period, the alien, pending removal, *shall* be subject to

supervision under regulations prescribed by [DHS].” 8 U.S.C. § 1231(a)(3) (emphasis added).

Under 8 C.F.R. § 241.4(l)(2), DHS may revoke release if an official with the authority to do so, determines: of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate. 8 C.F.R. § 241.4(l)(2). The regulations governing revocation provide noncitizens with procedural protections: noncitizens must be notified of the reasons for the revocation and must have an initial informal interview “to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.” 8 C.F.R. § 241.4(l)(1); *see also Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 225 (D. Mass. 2025).

Here, Respondents did not detain Petitioner during the 90-day removal period and did not formally place Petitioner under an OSUP. Now, years later, Respondents seek to detain Petitioner without even the process she would be due had they issued the order of supervision. 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5 (“An alien released pursuant to § 241.4 shall be released pursuant to an order of supervision.”). Where the government did not comply with statutory requirements, the Respondents cannot now skip “the procedural protections Petitioner would have been entitled to if the government had followed the law in the first place.” *Da Silva Lima*, 26-cv-12266-IT at *8. *See also Diallo v. Joyce*, 817 F. Supp. 3d 202, 209 (S.D. N.Y. 2025) (“[I]t defies common sense to broadly read section 1231 to authorize Diallo’s detention even though she was never previously detained nor given any order of supervision, but to deprive her of the procedural safeguards that someone like Diallo would have if the government had only followed its own legal mandates.”).

Petitioner did not receive the protections set forth in the regulations. The record does not reflect that an authorized person determined that the purposes of release had been served, or that Ms. Rosales had violated a condition of release, or that it was now appropriate to enforce the

removal order (despite the prior DACA grant and pending renewal). *See* 8 C.F.R. § 241.4 (l)(2). Respondent did not receive a notification of the reasons for her detention or any opportunity for an informal interview allowing Petitioner to respond to the reason for the revocation. Respondents thus failed to follow their own procedures and regulations for revocation of release and removal.

Moreover, in *Da Silva Lima v. Wesling*, No. 1:26-cv-12266-IT, at 6 (D. Mass. May 27, 2026), another court in this district rejected the argument Respondents make here. In that case, the government also argued that a noncitizen who was not detained during the 90-day removal period could nonetheless be detained without process under Section 1231(a)(6) based on inadmissibility alone. The court disagreed, holding that Section 1231(a)(6) "applies to individuals originally detained during the 90-day removal period, whose detention may be extended beyond the 90 days, and does not apply to an initial detention occurring after the removal period has ended." *Id.* (collecting cases, including *Parra v. Favro*, U.S. Dist. LEXIS 83965, at *9-10 (N.D. N.Y. Apr. 16, 2026)). This interpretation "reflects the longstanding view of the Supreme Court, the United States, and immigration authorities themselves about how section 1231 (a)(6) works." *Diallo v. Joyce*, 817 F. Supp.3d 202, 205 (citing *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001), for the mandatory/discretionary distinction between sections (a)(2) and (a)(6)).

As numerous courts in this circuit and elsewhere have found, Respondents failure to follow their own regulations in detaining her without process violated the law and, as in the cases cited above, the appropriate remedy is immediate release. *See, e.g., Diallo*, 817 F. Supp. 3d 202, 209-11; *DaSilva Lima*, 26-cv-1266-IT, at *9.[3]

[3] *See also, Doe v. Wesling*, 2026 U.S. Dist. LEXIS 140004, *3 (D. Mass. June 24, 2026) (citing cases); *Tran v. Lyons*, 2026 U.S. Dist. LEXIS 59036, *6-11 (D. Mass. Mar. 20, 2026); *Deng v. Nessinger*, 2026 U.S. Dist. LEXIS 47738, *8-12 (D.R.I. Mar. 9, 2026), *Gomes-Afonseca,* 2026 U.S. Dist. LEXIS 39654; *Vo v. Lyons*, 2026 U.S. Dist. LEXIS 26620, *14-16 (D.N.H. Jan. 27, 2026); *Huynh v. Wessling*, 2026 U.S. Dist. LEXIS 12585, *3-4 (D. Mass. Jan. 23, 2026); *Nguyen*

## V. PETITIONER'S DETENTION DOES NOT COMPORT WITH DUE PROCESS.

To comport with due process, detention must bear a reasonable relationship to its two regulatory purposes—to ensure the appearance of noncitizens at future hearings and to prevent danger to the community pending the completion of removal. *Zadvydas,* 533 U.S. at690-691. These requirements, flight risk and danger, reflect constitutional constraints, since only those who pose a flight risk or danger may be civilly detained. *Id.* In *Hernandez-Lara*, the First Circuit held that to continue detaining the petitioner, "due process requires the government either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." 10 F.4th 19, 41 (1st Cir. 2021).

Respondents have already determined that Petitioner is neither a flight risk nor a danger when they granted her release. Any suggestion that they did not know where to find her or could that she was failing to participate is belied by the fact that the government had all her information from her original and renewed DACA applications.

Under the applicable regulations, such a release necessarily involved a finding that she was not a danger to the community or a risk of flight. *See* 8 C.F.R. § 141(d) (1) (providing DHS may release a person post-removal order if, inter alia, the person demonstrates "that her or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight"); 8 C.F.R. § 1236.1(c)(8) (authorizing release on conditions if the person has "demonstrate[d] to the satisfaction of the officer that such release would not pose a danger to property or person, and that [they are] likely to appear for any future proceeding."); 8 C.F.R.

---

*v. Lyons*, 2026 U.S. Dist. LEXIS 8956, *8-11 (D.R.I. Jan. 16, 2026); *Hall,* 2026 U.S. Dist. LEXIS 89, *22-25; *Tran v. Hyde* ("*Tran I*"), 2025 U.S. Dist. LEXIS 265696, *12-13 (D. Mass. Dec. 24, 2025); *Nguyen v. Hyde* ("*Nguyen I*"), 788 F.Supp. 3d 144, 152-53 (D. Mass. 2025); *Munagi v. McDonald*, 813 F.Supp. 3d 225, 227-29 (D. Mass. 2025); *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226–27 (D. Mass 2025).

§212.5 (limiting parole to persons who "present neither a security risk nor a risk of absconding").[4]

As explained in *Da Silva Lima*, the above-described statutory and regulatory requirements for re-detention implicate noncitizens' procedural due process rights to notice and an opportunity to be heard. *DaSilva Lima*, 26-cv-1266-IT, at *9.[5]

The lack of procedures followed by Respondents violated Petitioner's due process rights. "In evaluating the procedures in any case, the courts must consider the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the

---

[4] *See also, e.g., Kirykovich v. Hernandez*, 2026 U.S. Dist. LEXIS 71703, *7 (W.D. Wash. Apr. 1, 2026) ("As other courts have found, when a petitioner is initially released that reflects a government determination that they were not a danger or a flight risk." (citing cases)); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[The petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [she] has a strong interest in remaining at liberty unless she no longer meets those criteria."). As the Court explained in *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 262-63 (D. Me. 2025), the need for a pre-detention hearing is even stronger when the government has already released the petitioner on bond or parole and the government must then demonstrate changed circumstances from the original release decision. *Id. See also Chaoyi Wu v. Stamper*, 2026 U.S. Dist. LEXIS 44133, *12-16 (D. Me. Mar. 4, 2026) ("Numerous district courts have recognized that an individual possesses an imputed liberty interest once the Government has exercised its discretion to release them into the community.").

[5] *See also, e.g., Jimenez*, 317 F. Supp. 3d at 655 ("8 C.F.R. § 241.4 was promulgated in an effort to provide [noncitizens] the procedural due process that courts had found to be constitutionally required."); *Rombot v. Souza*, 296 F. Supp. 3d at 388 ("[W]here an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid"(citation omitted)); *Hall v. Nessinger*, 2026 U.S. Dist. LEXIS 89, *9-25 (D.R.I. Jan. 2, 2026) (ordering release where ICE violated § 231.13 because "ICE's failure to provide a non-citizen with adequate notice of its basis for revoking supervised release violates the non-citizen's due process rights"); *Andrade v. Nessinger*, 2026 U.S. Dist. LEXIS 74580, *8 (D.R.I. Apr. 6, 2026) (ordering release of person previously released on recognizance); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321-23 (W.D. Wash. 2025) (holding that ICE's initial decision to release required finding of lack of dangerousness or risk of flight, so re-detaining without reconsidering those factors violated due process); *Pinchi*, 792 F. Supp. 3d at 1032 ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

In this case, the *Mathews* factors clearly weigh in favor of the requested relief.

First, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 678. The Supreme Court has "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases); *Destino*, 2025 U.S. Dist. LEXIS 269322, at *27 ("The court further finds that the liberty interest in this case is particularly strong because Destino was previously paroled into the country for nearly three years.").

As to the second *Mathews* factor, the lack of process has deprived the Petitioner of an important private interest, and she has already suffered a substantial and erroneous deprivation of her liberty interest in being detained and threatened with detention.

The requested relief is also appropriate under the third *Mathews* factor. The government's interest in civil detention or deportation of a person who is in the process of legally obtaining legal permanent status is minimal if any. *See, e.g.*, *Casun v. Hyde*, 2025 U.S. Dist. LEXIS 195429, *9 (D. R.I. Oct. 2, 2025) (characterizing the government's interest in detaining the petitioner without process as "insubstantial."); *E.A. T.-B.*, 795 F. Supp. 3d at 1323-24 (holding that the costs of following the proper procedures before re-detaining were "far outweighed by the risk of erroneous deprivation of the liberty interest at issue."). To the contrary, not-detaining unnecessarily and allowing appropriate pursuit of legal status as provided for by law is a benefit to the government and the lawful residents of the country, as contemplated by the INA provisions.

Numerous courts have ordered release where, as here, the Government re-detains an individual in violation of their due process rights. *See, e.g., Tran v. Lyons*, 2026 U.S. Dist. LEXIS 59036, at *11; *Munagi,* 2025 U.S. Dist. LEXIS 262634, *7; *dos Santos v. Noem*, 2025 U.S. Dist. LEXIS 157488, *21-24; *E.A. T.-B.,* 795 F. Supp. 3d at 1321-34.

## VI. MARIA ROSALES' CONDITIONS OF DETENTION ARE IMPERMISSIBLE.

Respondents have been housing Petitioner at an administrative processing facilities, which are both wholly unsuitable for detention beyond a few hours and incapable of providing constitutionally adequate conditions of confinement. She has not been provided adequate access to showers, sanitary facilities, water or food. She has not been able to see her counsel and has only limited ability to make telephone calls. *See* Exh. A.

ICE's own detention standards provide that, absent "exceptional circumstances," no detainee should be housed in a holding facility for longer than 12 hours. The National Detention Standards (revised 2025) expressly state: "A detainee may not be held in a hold room for more than 12 hours." ICE National Detention Standards (rev. 2025), § 2.6(b), https://www.ice.gov/doclib/detentionstandards/2025/nds2025.pdf. Courts have found that the Burlington oddixw, where Petitioner has now spent the last week, is a "wholly unsuitable facility" to house individuals for more than 12 hours. *See* Text Order, *Neto v. Choate*, 25-cv-00425-MSM (D. R.I. Jan. 23, 2026). Petitioner's detention in a location not appropriate for overnight detention and without adequate facilities is thus also a violation of ICE's own detention standards.

In fact, ICE has admitted that the Burlington facility is not proper housing. *See Peruano v. Wesling*, 2026 U.S. Dist. LEXIS 111700, *10 (D. Mass May 20, 2026) ("ICE concedes that the the holding area in Burlington [] is neither intended nor equipped to house one person, let alone a large group of people.") In *Peruano*, the Court criticized ICE's decision to house a group of women

in Burlington for a single night. *Id.* Maria Rosales has already been detained there for over a week along with approximately 7 other women, for at least some of the time. Exh. A.

## VII. RESPONDENTS DID NOT HAVE A WARRANT PRIOR TO ARRESTING THE PETITIONER, IN VIOLATION OF THE INA AND FOURTH AMENDMENT.

Moreover, it appears that Maria Rosales was detained at Logan Airport without a warrant. No warrant was presented to Ms. Rosales when she was taken into custody at Logan Airport. Exh. A. It appears that the arrest warrant filed by Respondents, ECF #9-4, was created after-the fact, in Burlington. Because Respondents apparently did not have a warrant at the time that they took Petitioner into custody, her arrest also violated 8 U.S.C. § 1226(a) and the Fourth Amendment.

The INA, at 8 U.S.C. § 1226(a), requires a proper arrest before detention can occur. *Id.* ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision whether the alien is to be removed from the United States.) Thus, it appears that Petitioner's arrest violated this provision of the statute, as well as the Fourth Amendment. Release is a proper remedy for such a violation because release would preserve the *status quo* of the parties prior to the statutory and Fourth Amendment violation. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

## CONCLUSION

Wherefore, Petitioner respectfully requests this Court declare that Petitioner's detention was unlawful and order Respondents to release Petitioner immediately, and not-re-detain her while her application for DACA renewal or other relief is pending and grant any further relief this Court deems just and proper.

Respectfully submitted,

Dated: July 20, 2026

<u>*/s/ Sara Miron Bloom*</u>
Sara Miron Bloom, #552351
Todd Pomerleau, 1640964

*Counsel for Petitioner*
Rubin Pomerleau, P.C.
Two Center Plaza, Suite 520
Boston, MA 02108
Tel: 617.367.0077
Email: sbloom@rubinpom.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2026, I electronically filed this Memorandum, and it is available for viewing and downloading from the Court's CM/ECF System, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system.

*/s/ Sara Miron Bloom*