**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARIA ROSALES,          ) | |
|         ) | |
|      Plaintiff,     ) | |
|         ) | |
|      v.       ) | Civil Action No. 26-13193-MJJ |
|         ) | |
| PATRICIA HYDE, et al.    ) | |
|         ) | |
|      Defendant.    ) | |
|         ) | |

**MEMORANDUM OF DECISION**

July 20, 2026

JOUN, D.J.

On July 10, 2026, after arriving on a domestic flight from Miami to Boston, Maria Rosales ("Petitioner") was arrested without a warrant at Logan International Airport. [Doc. No. 12 at 3]; [Doc. No. 1 at 2]. Petitioner, a 32-year-old who has lived in the United States since she was four years old, had previously been granted Deferred Action for Childhood Arrivals ("DACA") status. [Doc. No. 12 at 1]. Petitioner has filed a renewed DACA application, which remains pending with U.S. Citizenship and Immigration Services ("USCIS"). Petitioner has an outstanding Notice to Appear from August 11, 2014, which began the removal proceedings against Petitioner, but the Notice failed to state either a date or a time for the removal hearing. *See* [Doc. No. 9-1]. Until she was detained ten days ago, Petitioner had no knowledge of her final order of removal. [Doc. No. 12 at 10]. For ten days – since the date of her arrest – Petitioner has been detained by ICE at the ICE Burlington Facility, a facility which ICE itself admits is not equipped to serve as housing. *See* [Doc. No. 13 at 1]; s*ee also Peruano v. Wesling*, No. 26-10300, 2026 WL 1413758, *3 (D. Mass

May 20, 2026) ("ICE concedes that the holding area in Burlington [] is neither intended nor equipped to house one person, let alone a large group of people.")

After Petitioner's warrantless arrest at Logan International Airport, Petitioner filed a Petition for Writ of Habeas Corpus under § 2241. [Doc. No. 1]. In addition to seeking habeas corpus relief, Petitioner included causes of action for mandamus and injunctive relief and APA relief, joined together under Fed. R. Civ. P. 15, 18, and 20. [*Id.* at 1]. For the reasons that follow, the Petition is <u>GRANTED IN PART</u>.

## I.    JURISDICTION

Contrary to Respondents' assertions, 8 U.S.C. § 1252(g) does not strip this Court of jurisdiction over this Petition. [Doc. No. 9 at 2]. § 1252(g) is a narrow jurisdiction-stripping provision, applicable only to three discrete executive decisions. A challenge to the legality of detention is distinct from a challenge to the government's discretionary decision to execute a removal order and therefore is not barred by 8 U.S.C. § 1252(g). *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (citing *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006)). Here, Petitioner challenges the legality of her detention, and the legality of Respondents' interference with her ability to pursue immigration relief; she does not challenge the validity of the underlying removal order itself. *See generally* [Doc. No. 1]. Therefore, I find this Court has jurisdiction to consider this case.

## II.    STATUTORY FRAMEWORK

The parties disagree on which statutory provision governs Petitioner's detention, but I do not need to decide that question at this time. Respondents contend that because Petitioner's removal order became final in 2017, detention necessarily proceeds under §1231(a)(6). [Doc. No. 9 at 3]. Petitioner argues either that §1226 governs or, alternatively, that even under §1231, the

Government failed to follow the governing regulations before re-detaining her. [Doc. No. 1]. But even assuming that Respondents are correct, and §1231 governs, Respondents have not adequately addressed Petitioner's argument that she was previously released and remained at liberty for close to a decade. At a minimum, these facts indicate Petitioner was entitled to the basic procedural protections outlined in 8 C.F.R. §§241.4 and 241.3 before ICE revoked that liberty interest. Consistent with my prior decisions, and other decisions in this district, where the Department of Homeland Security ("DHS") previously released an individual with an OSUP or following expiration of the removal period, Respondents cannot simply disregard the regulatory procedures governing re-detention. *See, e.g.*, *Da Silva Lima v. Wesling*, No. 26-cv-12266 (D. Mass. May 27, 2026) (granting habeas petition and releasing petitioner where petitioner had been detained following expiration of the removal period without the procedural safeguards); *Tran v. Lyons*, No. 26-cv-11036, 2026 WL 788242 (D. Mass. Mar. 20, 2026) (same); *Melgar-Melgar v. Moniz*, No. 26-cv-12410, Doc. No. 15 (D. Mass. June 10, 2026) (same).

## III.  DUE PROCESS

"Civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). The Due Process Clause protects a noncitizen subject to a final order of deportation, though the nature of that protection may vary depending upon status and circumstance. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Further, the Immigration and Nationality Act ("INA") requires due process before an immigration arrest can occur. Without a proper warrant, an officer can only make an immigration arrest when the officer has probable cause both that a person is in the United States in violation of the law and is likely to escape before a warrant can be obtained. *See* 8 U.S.C. § 1357.

3

Here, Respondents do not meaningfully contest either the lack of warrant at the moment of detention, or the lack of procedural protections. Respondents state Petitioner was arrested due to her final order of removal, which was issued in 2017, but do not cite to an administrative warrant. [Doc. No. 9 at 2]. Indeed, the warrant, [Doc. No. 9-4], which is a warrant of removal, appears to have been completed at Burlington, after Petitioner was detained, on July 10, 2026. Petitioner was not presented with a warrant when taken into custody. [Doc. No. 12 at 20]. Further, Petitioner resided openly in the United States for many years after being released following her Notice to Appear, [Doc. No. 9 at 2], and during that time, DHS granted her deferred action and accepted a renewal application that remains pending. [Doc. No. 12 at 5]. Respondents do not dispute these facts. At this time, I do not need to decide the legal consequences of Petitioner's pending DACA renewal. It is enough to conclude that where the Government has itself invited an individual to seek renewal of deferred action while simultaneously allowing that application to remain unresolved for years, due process requires adherence to the Government's own regulations before abruptly revoking Petitioner's liberty and executing removal. The record suggests these procedures were not followed.

## IV.  APA CLAIM

This Court need not decide whether Respondents have adopted an unlawful nationwide policy concerning DACA recipients or applications, or whether DACA independently bars removal as it is not necessary to resolve the Petition. The Court declines at this stage to order dismissal of removal proceedings or to determine Petitioner's ultimate enrollment in DACA, or to hold that every recipient of deferred action is immune from detention.

## V.    BALANCE OF THE EQUITIES

Petitioner has demonstrated substantial likelihood of success on the merits on her claim that ICE failed to comply with the statutory and regulatory framework governing her detention following years of liberty in the community. Loss of physical liberty constitutes irreparable harm. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) ("[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections." (quotation omitted)).  Respondents assert that removal is imminent. [Doc. No. 9 at 5–6]. But that assertion actually weighs against them rather than against interim relief. If removal occurs before Petitioner's claims can be adjudicated, the deprivation of her opportunity to pursue pending immigration relief may become effectively unreviewable. Conversely, Respondents have not demonstrated that temporary release under appropriate conditions would materially impair the Government's interests. Petitioner previously remained at liberty for many years, maintained employment, and previously complied with DACA requirements. [Doc. No. 12 at 1–2]. Respondents identify no evidence that she presents either a danger to the community or a meaningful risk of flight beyond the existence of the removal order itself. Taken together, this weighs decisively in Petitioner's favor.

## VI.   RELIEF

For the foregoing reasons, Respondents have failed to demonstrate compliance with the statutory and regulatory procedures governing Petitioner's detention. The appropriate remedy is release, under reasonable conditions pending further proceedings. A condition precluding Petitioner from returning to her home in Miami would be unreasonable. The Petition at [Doc. No. 1] is therefore <u>GRANTED in part</u>. Respondents are <u>ORDERED</u> to release Petitioner IMMEDIATELY, by no later than 7pm today. Respondents are further <u>ORDERED</u> to file a status

report by tomorrow, July 21, 2026, at 12pm, confirming that Petitioner has been released from custody. Respondents are not permitted to re-detain Petitioner absent compliance with the applicable statutory and regulatory procedures. This temporary stay of removal shall remain in effect pending further order of the Court solely to preserve this Court's jurisdiction over Petitioner's claims. For these reasons, Respondents' Notice of Intent to Transfer, [Doc. No. 13], is DENIED. The parties are further ORDERED to submit a joint proposed schedule for resolution of Petitioner's remaining constitutional and APA claims within 14 days.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge